# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEE DEIDRE FARMER | * | |
| Petitioner, | * | Civ. Action No. RDB-18-2336 |
| v. | * | Crim. Action No. RDB-17-0451 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On December 21, 2017, *pro se* Petitioner Dee Deidre Farmer ("Farmer" or "Petitioner") pled guilty to two Counts in a three-Count Indictment: theft of government money in violation of 18 U.S.C. §§ 641 (Count One) and aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) (Count Three). (Plea Agreement, ECF No. 29; Judgment, ECF No. 31.) Farmer had entered her guilty plea in accordance with a plea agreement. (ECF No. 29.) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed on a total sentence of 36 months (three years) of imprisonment. On that same day, the Honorable Marvin J. Garbis of this Court[1] accepted the parties' plea agreement and sentenced Petitioner to a total term of imprisonment of three years followed by two years of supervised release. (ECF No. 29; Judgment, ECF No. 31.)

Petitioner has filed ten motions seeking miscellaneous forms of post-conviction relief. Currently pending are Petitioner's Motion to Amend the Judgment and Commitment (ECF

---

[1] On July 30, 2018, this case was reassigned to the undersigned upon Judge Garbis's retirement.

No. 36); a Motion for an Order Directing the U.S. Probation Office for the District of Maryland to Supplement the Presentence Investigation Report (PSR) with the Defendant's Substance Abuse History (ECF No. 37) ("Motion to Supplement the Presentence Investigation Report"); a Motion to Expedite this Court Acting on Defendant's Pending Motion to Amend the Judgment and Commitment and Defendant's Motion for an Order Directing the Probation Office to Supplement its Report (ECF No. 38) ("Motion to Expedite"); a Motion for Judicial Notice (ECF No. 39); Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 47) ("Motion to Vacate"); several Motions for Appointment of Counsel (ECF Nos. 50, 64, 65, 66); and a letter requesting "partial summary judgment" (ECF No. 68) ("Motion for Summary Judgment").

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Petitioner's Motion to Amend the Judgment and Commitment (ECF No. 36) is DENIED; Motion to Supplement the Presentence Investigation Report (ECF No. 37) is DENIED; Motion to Expedite (ECF No. 38) is DENIED; Motion for Judicial Notice (ECF No. 39) is DENIED; Motion to Vacate (ECF No. 47) is DENIED; Motion for Summary Judgment (ECF No. 68) is DENIED; and Motions for Appointment of Counsel (ECF Nos. 50, 64, 65, 66) are DENIED.

# BACKGROUND

## I. Factual Background.

Farmer stipulated to the following facts in her Plea Agreement. (ECF No. 29.) From November 2011 until August 2017, Farmer used the identity of George Seward, a prisoner,[2] to receive Supplemental Security Income ("SSI") program benefits. (*Id.* at 8.) On November 4, 2011, Farmer fraudulently obtained a Maryland Driver's license under Seward's name. (*Id.*) On December 12, 2011, Farmer used Seward's name, date of birth, and social security number to apply for SSI benefits based on blindness and AIDS.[3] (*Id.*) The Social Security Administration denied that initial benefit claim. (*Id.*)

Farmer's initial denial of benefits did not deter her. On April 17, 2012, Farmer again used Seward's personal information to submit another application for SSI benefits claiming disability based on blindness and AIDS. (*Id.* at 9.) In support of her application, Seward created and submitted fake medical reports which purported to be from Seward's treatment providers. (*Id.*) On that same day, Farmer opened a Bank of America account in Seward's name at a branch location at Johns Hopkins Hospital in Baltimore, Maryland, where the Petitioner was receiving treatment. (*Id.*) This time, the Social Security Administration approved the application. (*Id.*) On May 1, 2012, Farmer started to receive benefits under

---

[2] Seward was released from prison on February 10, 2016. (ECF No. 29 at 8.) Law enforcement authorities began investigating this matter after Seward attempted to apply for SSI benefits and was informed that someone was already receiving benefits in his name. (*Id.*)

[3] Petitioner is blind and has AIDS; Seward does not. (ECF No. 29 at 8.)

Seward's identity. (*Id.*) Those benefits were deposited into the Bank of America account that Petitioner had previously opened using Steward's identity, and direct deposit was established.

This was not Petitioner's only fraudulent scheme. In March 2012, Petitioner sent a forged court subpoena to Experian Credit Agency in an attempt to obtain personal and financial information associated with 37 individuals. *Farmer v. United States*, No. 12-CR-758, 2016 WL 1276461, at *1 (S.D.N.Y. Mar. 30, 2016), *reconsideration denied*, No. 12-CR-758, 2017 WL 3448014 (S.D.N.Y. Aug. 10, 2017). On September 12, 2013, she pled guilty to a superseding indictment arising from that scheme in the United States District Court for the Southern District of New York. *Id.* Specifically, Farmer pled guilty to conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349; conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 505; and three counts of aggravated identity theft in violation 18 U.S.C. § 1028A. *Id.* Despite imprisonment in New York, Farmer continued to receive SSI benefits under Seward's name through direct deposit in the Bank of America account that she opened in Maryland. (*Id.*)

On August 23, 2017, the Grand Jury for the District of Maryland issued the Indictment in this case charging her with theft of government money in violation of 18 U.S.C. § 641 (Count One), social security account number fraud in violation of 42 U.S.C. § 408(a)(7)(B) (Count Two), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Count Three). (ECF No. 23.)

## II. The Plea Agreement, Plea Colloquy, and Sentencing.

On December 15, 2017, Farmer entered into a plea agreement with the Government. (Plea Agreement, ECF No. 29.) Farmer agreed to plead guilty to Counts One and Three of the Indictment, which charged her with theft of government money in violation of 18 U.S.C. § 641 (Count One) and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Count Three). (*Id.* ¶ 1.) The agreement contained stipulations with respect to the application of the United States Sentencing Guidelines. As to Count One, the parties agreed that an adjusted offense level of 13 was appropriate, based in part on a two-level sentencing enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. (*Id.* ¶ 6(d), (f).) As to Count Three, the parties agreed that a mandatory consecutive minimum sentence of two years applied. (*Id.* ¶ 6(g).) The parties further stipulated that Petitioner had a criminal history category of VI under the Sentencing Table. (*Id.* ¶ 6(h).) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed that a total sentence of 36 months in the custody of Bureau of Prisons (12 months as to Count One and 24 months as to Count Three, to be served consecutively) was the appropriate disposition of the case. (*Id.* ¶ 7.) In exchange for her guilty plea as to Counts One and Three, the Government agreed to dismiss Count Two. (*Id.* ¶ 9.)

On December 21, 2017, Farmer pled guilty to Counts One and Three and not guilty to Count Two. During the Rule 11 Plea Colloquy, Farmer expressed satisfaction with her counsel, James Wyda,[4] and an understanding of the plea agreement. Farmer agreed with her counsel's assessment that she understood the ramifications of pleading guilty and that she pled

---

[4] James Wyda is the Federal Public Defender for the District of Maryland.

guilty because she believed it was "in her best interest" to do so. (12/21/2017 Hr'g Tr. 6:18-24, ECF No. 54.) Farmer described the legal assistance she received from her counsel as "excellent." (*Id.* at 11:9-11.) She acknowledged that she was giving up certain rights by pleading guilty, including the right to call witnesses, to testify, and to appeal a guilty verdict. (*Id.* at 12:19-13:15.) Farmer indicated that she understood that she had stipulated to a 36-month sentence. (*Id.* at 20:8-11.) Finally, Farmer admitted that she did, in fact, commit the crimes to which she was pleading guilty. (*Id.* at 20:23-25.)

Immediately following the re-arraignment, Farmer's counsel moved to commence sentencing proceedings and to waive the preparation of a presentence investigation report. (*Id.* at 27:17-22.) Farmer personally informed the Court that she wished to proceed immediately to sentencing even after this Court informed her that sentencing could be delayed and a presentence investigation report prepared. (*Id.* at 27:23-28:3.) Judge Marvin J. Garbis of this Court granted the Government's motion and proceeded to sentencing, reasoning that the parties had entered into a "(C)" plea and that the record contained sufficient information about the defendant, including her health issues. (*Id.* at 29:5-10.) Ultimately, after considering the applicable Guidelines range of 33 to 41 months imprisonment, this Court sentenced Petitioner to the agreed three years of imprisonment followed by two years of supervised release. (Plea Agreement, ECF No. 29; Judgment, ECF No. 31.) This Court remarked that Farmer's sentence was "extraordinarily light" given the nature of her crimes, but nevertheless

determined that it was appropriate after taking into account her deteriorating health.[5]  (*Id.* at 30:23-31:6.)

### III.    Subsequent Legal Challenges.

Consistent with the Rule 11(c)(1)(C) plea entered in this case, Petitioner did not appeal her sentence to the United States Court of Appeals for the Fourth Circuit.  She has, however, since filed a number of motions in this Court seeking various forms of post-conviction relief. All of her claims are without merit.  These motions are as follows:  Petitioner's Motion to Amend the Judgment and Commitment (ECF No. 36); a Motion to Supplement the Presentence Investigation Report (ECF No. 37); a Motion to Expedite (ECF No. 38); a Motion for Judicial Notice (ECF No. 39); a Motion to Vacate (ECF No. 47); several Motions for Appointment of Counsel (ECF Nos. 50, 64, 65, 66); and a Summary Judgment Motion (ECF No. 68).

### STANDARD OF REVIEW

This Court recognizes that the Petitioner is *pro se* and has accorded her pleadings liberal construction.  *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007).  Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside, or correct her sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to a

---

[5] During the sentencing hearing, Petitioner's counsel remarked that Farmer's advanced-stage AIDS rendered her susceptible "to any infection" and that her life was "extremely vulnerable."  (ECF No. 54 at 33:22-34:4.)

collateral attack. *Hill v. United States*, 368 U.S. 424, 426-27, 82 S. Ct. 468 (1962) (citing 28 U.S.C. § 2255).

The scope of a § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165. 102 S. Ct 1584 (1982)). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion unless the petitioner can demonstrate cause and prejudice, or actual innocence. *United States v. Pettiford*, 612 F. 3d 270, 280 (4th Cir. 2010); *see Dretke v. Haley*, 541 U.S. 386, 393, 124 S. Ct. 2291 (2004); *Reed v. Farley*, 512 U.S. 339, 114 S. Ct. 2291 (1994); *see also United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). Conversely, any "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509, 123 S. Ct. 1690 (2003).

The Supreme Court has established that "a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson,* 467 U.S. 504, 508, 104 S. Ct. 2543 (1984). A prisoner who has entered a guilty plea can successfully challenge her sentence under 28 U.S.C. § 2255 on one of three bases: (1) the defendant's plea was not voluntary and intelligent; (2) the defendant did not receive effective assistance of counsel prior to entering the plea; or (3) "on the face of the record the court had no power to enter the conviction or impose the sentence." *United States v. Broce,* 488 U.S. 563, 569, 109 S. Ct. 757 (1989); *see also Mabry,* 467 U.S. at 508; *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S. Ct. 1602 (1973).

# ANALYSIS

This Court addresses Petitioner's ten motions seriatim. Petitioner voluntarily pled guilty pursuant to a plea agreement, and received the sentence which she agreed was appropriate pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). For this reason, and the reasons stated herein, Petitioner's motions (ECF Nos. 36, 37, 38, 39, 47, 50, 64, 65, 66, and 68) are DENIED.

## I.   Motion to Vacate (ECF No. 47).

Petitioner appears to advance seven arguments in support of her Motion to Vacate.[6] (Aff. of Dee Deidre Farmer ¶ 58, ECF No. 47-1.) Many of these arguments cannot be asserted at this stage, and all of them fail on the merits. The arguments are as follows:

- First, Petitioner argues that she is "actually innocent" of aggravated identity theft as charged in Count Three because "Popeye" (Seward) authorized her to use his identity to obtain SSI benefits;

- Second, Petitioner asserts that she has been prosecuted for her offenses in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, U.S. Const., amend. V, because her conviction in this Court stems from the "same course of conduct" at issue in the Southern District of New York;

- Third, Farmer argues that this Court lacked "venue jurisdiction";

---

[6] Petitioner presents these "arguments" as a list of items which she discussed with doctors, professors, and lawyers. (ECF No. 47-1 at ¶¶ 57, 58.) In light of the Petitioner's *pro se* status, this Court has charitably construed Petitioner's list as a series of arguments in support of her motion.

- Fourth, she claims that this Court improperly used the Presentence Report prepared in connection with her prosecution in the Southern District of New York during sentencing;

- Fifth, she claims that the United States Probation Office in the District of Maryland "unlawfully adopted and supplemented" the Presentence Report prepared in connection with her prosecution in the United States District Court for the Southern District of New York;

- Sixth, Petitioner argues that she was not guilty of obstruction of justice because she was "not able to do anything, including think" after learning of the Indictment in this case;

- Finally, Petitioner argues that she obtained ineffective assistance of counsel because Mr. Wyda failed to advise the Court of a "mitigating circumstance," namely, that she sent several letters by certified mail to the Social Security Administration requesting the cessation of SSI benefits issued in Seward's name. She also faults her counsel for failing "to investigate or present any potential defense, including those noted here."

These arguments are frivolous. Petitioner cannot advance any of these arguments, save for claims of actual innocence and ineffective assistance of counsel, because she did not assert them on direct appeal. Even if they were properly raised, they would fail on their merits. This Court addresses Farmer's arguments in turn.

### A. Procedurally Barred Claims.

Petitioner's claims concerning double jeopardy, venue, the use and preparation of a presentence report, obstruction of justice, and mitigating circumstances are subject to

procedural default because they were not raised on appeal. The scope of a § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster*, 136 S. Ct. at 1758 (quoting *Frady*, 456 U.S. at 165, 102 S. Ct 1584). Any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion unless the petitioner can demonstrate cause and prejudice, or actual innocence. *Pettiford*, 612 F.3d at 280.

Petitioner argues that she is "actually innocent" of the aggravated identity theft as charged in Count Three because Seward authorized her to use his identity to obtain SSI benefits.[7] Petitioner's procedural default may be excused if she can show that constitutional error "has probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. 615 (1998). To show that she is actually innocent, Farmer must demonstrate that "it is more likely than not that no reasonable juror would have convicted [her]." *Id.* at 623.

Petitioner has failed to make this difficult showing. As a preliminary matter, petitioner's claims fail because they contradict her sworn statements during her Rule 11 plea colloquy. Allegations made in a § 2255 petition which contradict a petitioner's sworn statements in a Rule 11 plea colloquy are always deemed "palpably incredible" and "patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). During her Rule 11 Plea colloquy, Petitioner admitted that she was guilty of her crimes. (ECF No. 54 at

---

[7] It is not clear whether Petitioner brings this claim as a means of reaching procedurally barred claims or whether it is asserted as an independent claim which purportedly entitles her to relief. The claim fails regardless of this distinction.

21:5-7.) Soon thereafter, the Government recited the facts it could prove had the case advanced to trial. During this recitation, the Government stated that it could prove that "[Seward] never authorized the defendant to use his identity for any purpose." (*Id.* at 26:18-19; ECF No. 29 at 10.) Farmer indicated that she agreed that the Government could prove those facts at trial. (ECF No. 54 at 26:17-19.) Accordingly, Petitioner's "actual innocence" claim fails because it contradicts her sworn statements.

Her sworn statements aside, Petitioner would not be actually innocent even if Seward had authorized her to use his identity. To prove aggravated identity theft, "the government is not required to prove that the defendant possessed, transferred, or used the other person's identification without that person's consent." *United States v. Adeyale*, 579 F. App'x 196, 200 (4th Cir. 2014) (per curiam) (quoting *United States v. Otuya*, 720 F.3d 183, 189 (4th Cir. 2013)). Petitioner cannot evade her conviction by claiming that she committed fraud with another's permission. Accordingly, Petitioner has failed to establish that she was actually innocent of aggravated identity theft.

Petitioner has otherwise failed to establish "cause" or "prejudice" warranting relief from the procedural bar of her claims. Accordingly, the bulk of Petitioner's arguments are procedurally barred. Nevertheless, even if all of Petitioner's arguments were properly presented, they would fail on the merits. This Court addresses each of the Petitioner's arguments in turn.

### 1. Double Jeopardy.

Petitioner asserts that she has been prosecuted in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, U.S. Const., amend. V, because her conviction in this Court stems from the "same course of conduct" at issue in the Southern District of New York.  In other words, Petitioner contends that her prosecution for aggravated identity theft in both the Southern District of New York and in the District of Maryland violated her Fifth Amendment rights.  The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const., amend. V.  Two components make up this guarantee: "'[t]he first provides protections against the imposition of cumulative punishments for the same offense in a single criminal trial; the second against being subjected to successive prosecutions for the same offense, without regard to the actual imposition of punishment." *United States v. Goodine*, 400 F.3d 202, 206 (4th Cir. 2005) (quoting *United States v. Ragins*, 840 F.2d 1184, 1187 (4th Cir.1988)).  To determine whether double jeopardy bars either additional punishment or successive prosecution, courts apply the test established in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180 (1932).  *United States v. Williams*, 155 F.3d 418, 419-20 (4th Cir. 1998); *United States v. Dixon*, 509 U.S. 688, 696-97, 113 S. Ct. 2849 (1993).  Under the *Blockburger* test, such prosecutions do not violate the Double Jeopardy Clause if "each offense contains an element not contained in the other."  *Williams*, 155 F.3d at 419-20 (quoting *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849 (1993)).

The aggravated identity theft statute imposes a mandatory consecutive two-year sentence on anyone who "during and in relation to any felony violation enumerated in

subsection (c) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A. Defendants may face successive prosecutions for aggravated identity theft without offending double jeopardy, so long as the identity theft charges are supported by different underlying felonies. In such cases, the charges are comprised of different elements and satisfy the *Blockburger* test. *Cf. United States v. Soto*, 799 F.3d 68, 87-88 (1st Cir. 2015) (holding that defendant could be charged with multiple counts of identity theft because each count was supported by a different underlying felony); *United States v. Khan*, 461 F.3d 477, 493-94 (4th Cir. 2006) (holding that district court may impose successive sentences for violations of 18 U.S.C. § 924(c), so long as each § 924(c) charge was supported by different underlying crimes).

Farmer's convictions in this Court and in the Southern District of New York do not violate the Double Jeopardy Clause because different felony charges support the aggravated identity theft convictions. In this case, Farmer was convicted under one count of 18 U.S.C. § 1028A. The felonies underlying this conviction were theft of government money in violation of 18 U.S.C. § 641 and Social Security account number fraud in violation of 42 U.S.C. § 408(a)(7)(B). The convictions arose from Farmer's use of Seward's identity to obtain SSI benefits. In the Southern District of New York, Farmer was convicted of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341, conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 505, and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. The § 1028A convictions were supported by violations of 18 U.S.C. § 1349, conspiracy to violate 15 U.S.C. § 6823, and 18 U.S.C. § 505. These charges arose out of Defendant's use of Seward's name in connection with her scheme to procure the

credit information of 37 people through Experian. As the aggravated identity theft convictions contain different elements—that is, are supported by different predicate felonies—Farmer's successive prosecutions do not violate the double jeopardy clause.

### 2. Venue.

Without further elaboration, Petitioner argues that this Court lacks "venue jurisdiction." Presumably, Petitioner intends to argue that the District of Maryland was not the proper venue for these proceedings. Article III of the United States Constitution requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const., art. III, § 2, cl. 3. Federal Rule of Criminal Procedure 18 provides that venue lies "in a district where the offense was committed." To determine where a particular offense is committed, courts must determine "the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (quoting *United States v. Cabrales*, 524 U.S. 1, 6-7, 118 S. Ct. 1772 (1998)).

Venue was proper in the district of Maryland because all of Farmer's criminal acts took place in this district. Farmer stipulated and admitted that she opened a bank account in Maryland in Seward's name to obtain direct deposit of SSI benefits intended for Seward, and that she made purchases with these funds in Maryland. Accordingly, there is no merit to Petitioner's venue challenge.

### 3. Use of Presentence Report Prepared in the Southern District of New York at Sentencing.

Next, Farmer maintains that this Court improperly used the Presentence Report prepared in connection with her prosecution in the Southern District of New York during her

sentencing. This argument is puzzling. There is no indication in the record that this Court referred to or considered the presentence investigation report prepared in the Southern District of New York. The extraordinarily lenient sentence imposed in this case was based primarily on Petitioner's late-stage AIDS diagnosis. To the extent that Petitioner is arguing that this Court should have prepared another presentence report, such an argument would fail because Petitioner explicitly waived her right to have a separate report prepared in this case.

### 4. Alleged Supplementation of the Presentence Report Prepared in the Southern District of New York.

Farmer additionally claims that the United States Probation Office in the District of Maryland "unlawfully adopted and supplemented" the Presentence Report prepared in connection with her prosecution in the Southern District of New York. This did not occur. On January 22, 2018, the Probation Office produced a Supplemental Report to the Bureau of Prisons (ECF No. 59-5) which indicated that it had extrapolated some information from previous reports written for the Southern District of New York in 2013. (*Id.* ¶ 41.) The report made brief reference to her convictions in that district, but did not provide information beyond that which was available in the parties' plea agreement. (*Id.* ¶ 6, 60.) Petitioner has failed to indicate why this report was unlawful, or how it entitles her to any relief. Accordingly, this claim is without merit.

### 5. Guidelines Enhancement Under 3C1.1.

Petitioner argues that she is not "guilty of obstruction of justice." Petitioner was not convicted of obstruction of justice in violation of 18 U.S.C. § 1503. She appears to be arguing that a two-level enhancement under Sentencing Guideline § 3C1.1 should not have applied in her case. In general, a misapplication of the sentencing guidelines is not cognizable under §

2255. *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999). Nevertheless, the enhancement clearly applied in this case. Section 3C1.1 of the Sentencing Guidelines directs a sentencing court to increase a defendant's offense level by two level if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstruction conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." U.S.S.G. § 3C1.1. As Advisory Note 4 to Section 3C1.1 of the Sentencing Guidelines explains, this conduct includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly, or attempting to do so."

In this case, Petitioner stipulated in her plea agreement that a two-level enhancement under U.S.S.G. § 3C1.1 applies. She further stipulated that she "coached" her mother, Noleola Randall, by telling her that the "only thing you know about my account is that I told you that I had put the account in [Seward's] name" and by making similar remarks in an attempt to influence her recollection of events or alter her potential testimony. (ECF No. 29 at 10.) Under these circumstances, a two-level sentencing enhancement was warranted under the Guidelines.

### B. Ineffective Assistance of Counsel.

Petitioner claims that she received ineffective assistance of counsel in violation of her rights under Sixth Amendment to the United States Constitution. A freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). To state a

claim for relief based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671, 104 S. Ct. 2052 (1984).

The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Id.* at 688. In making this determination, courts apply a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688–89. To satisfy the first prong, the Petitioner ". . . must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound . . . strategy.' " *Id.* at 689. Specifically, a Petitioner must identify ". . . the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The second, or "prejudice" prong, requires that a petitioner demonstrate that her counsel's errors "had an adverse effect on the defense." *Id.* at 693. In the plea bargaining context, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366 (1985).

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has noted that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee*, 723 F. 3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697.

Petitioner claims that her counsel "fail[ed] to investigate or present any potential defense, including those noted here . . . ." (ECF No. 47 at ¶ 58.) With this language, it appears that Petitioner intends to claim that her counsel was ineffective for failing to present the otherwise procedurally defaulted arguments discussed *supra* and, more generally, for failing to present any defenses at all. Petitioner's ineffective assistance of counsel claims are without merit. Petitioner's counsel obtained a highly favorable sentence considering the egregious nature of the crimes to which she pled guilty. Any contention that Petitioner's counsel performed deficiently contradicts Farmer's sworn testimony. Moreover, Petitioner cannot show that her counsel's alleged failure to raise the arguments she presents in her motion resulted in ineffective assistance because all of these arguments are meritless.

During her plea colloquy and sentencing hearing, Petitioner praised her counsel's performance. Now, she claims that her counsel committed "substantive errors" by failing "to investigate or present any potential defenses," including those raised in her motion. Statements made during a Rule 11 plea colloquy are "conclusively established" as truth unless an extraordinary circumstance indicates otherwise. *Lemaster*, 403 F.3d at 221–22. A § 2255 motion which relies on allegations which contradict a petitioner's sworn statements must be denied. *Id.*

During her Rule 11 plea colloquy, Farmer indicated that she had sufficient opportunity to discuss her case and plea with her attorney and was satisfied with her counsel's representation. (Transcript, ECF No. 59, Ex. 2 at 11:5-11.) She described her counsel's performance as "excellent." (*Id.* at 11:11.) Plea counsel's fine performance is reflected by the

highly favorable sentence he secured in this case. As a result of counsel's efforts, Farmer and the Government agreed upon a sentence which fell well below the Guidelines range.

Petitioner's counsel was not ineffective for declining to raise the arguments presented in Petitioner's motion. Refraining from raising unmeritorious claims is both reasonable and desirable. *Tuesdale v. Moore*, 142 F.3d 749, 756 (4th Cir. 1998) ("It is certainly reasonable for counsel not to raise unmeritorious claims."). Petitioner cannot be prejudiced by the failure to raise the meritless claims presented in her motion, because such claims would have been rejected. *See Hill*, 474 U.S. at 59, 106 S. Ct. 366 ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."). Accordingly, Petitioner's ineffective assistance of counsel claim fails.

In sum, the claims presented in Petitioner's Motion to Vacate are without merit. Petitioner received a sentence well below the applicable Guidelines range with the assistance of competent counsel. Accordingly, the Motion to Vacate (ECF No. 47) is DENIED.

## II.     Motion to Amend the Judgment and Commitment (ECF No. 36).

In a separate motion, Farmer petitions this Court to amend the Judgment and Commitment to include drug rehabilitation services. Pursuant to Federal Rule of Criminal Procedure 35(a), this Court may "correct a sentence that resulted from arithmetical, technical, or other clear error" within 14 days of sentencing. Once this time period has expired, the Court lacks jurisdiction to modify a judgment of conviction order. *United States v. Addonizio*,

442 U.S. 178, 189 (1979). Petitioner filed her motion about six months after sentencing. Accordingly, this Court has no power to amend the Judgment and Commitment and her Motion (ECF No. 36) is DENIED.

### III.   Motion to Supplement the Presentence Report (ECF No. 37).

In conjunction with her Motion to Amend the Judgment (ECF No. 36), Farmer petitions the Court to issue an Order compelling the Probation Office to supplement her Presentence Report (PSR) with her substance abuse history because she seeks to enroll in the Bureau of Prisons Residential Drug Abuse Program and must "prove [she] was addicted to narcotics one year prior to [her] incarceration." (ECF No. 37.) This Court does not have jurisdiction to order modification of a PSR after sentencing. *United States v. Boardley*, 61 F. App'x 904 (4th Cir. 2003) (per curiam); *see also United States v. Cripps*, 1:10-CR-00461-LJO, 2017 WL 1115972, at *1 (E.D. Cal. Mar. 27, 2017) (denying petitioner's request to modify PSR to include a recommendation for the RDAP program because court lacked jurisdiction to do so after sentencing).

In this case, Farmer requested to proceeded to sentencing immediately after her plea colloquy without the creation of a PSR. Accordingly, there is no PSR for this Court to amend. Even if a PSR had been created, this Court would not have had jurisdiction to amend it because her Motion was filed well after sentencing. Accordingly, Petitioner's Motion to Supplement the Presentence Report (ECF No. 37) is DENIED.

## IV.     Motion for Judicial Notice (ECF No. 38).

Also pending is Petitioner's Motion for Judicial Notice, pursuant to which she petitions this Court to take judicial notice that she was "addicted to narcotic pain medication prior to her current imprisonment." (ECF No. 39.) Farmer has attached a note written under the letterhead of The Johns Hopkins Hospital which states she was prescribed Oxycontin twice a day during the years of 2011 and 2012. (*Id.*) The note further states that this drug "can potentially lead someone to develop an addiction to opioids." (*Id.*)

Pursuant to Federal Rule of Evidence 201, a court may "notice a fact that is not subject to reasonable dispute" if it is either generally known within the court's jurisdiction or can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Petitioner's Motion does not provide a sufficient basis for taking judicial notice of her purported drug addiction. Though the note states that Oxycontin taken twice a day could "*potentially* lead *someone* to develop an addiction," (ECF No. 39) (emphasis added), the note does not assert that Farmer has a drug addiction. Accordingly, Petitioner's Motion for Judicial Notice is DENIED. (ECF No. 39.)

## V.     Motion to Expedite (ECF No. 38).

Contemporaneous with her Motions to Amend the Judgment and Commitment, the Motion to Supplement the Presentence Report, and the Motion for Judicial Notice, Petitioner submitted a Motion to Expedite this Court's ruling. (ECF No. 38.) This Motion is DENIED AS MOOT because Petitioner has failed to present any grounds for relief in her motions and this Court has now ruled upon them.

## VI. Motion for Summary Judgment (ECF No. 68).

On April 29, 2019, Farmer filed a Motion for "Summary Judgment" pursuant to Federal Rule of Civil Procedure 56. Petitioner argues that there was an insufficient factual basis to support her guilty plea. Rule 11(f) of the Federal Rules of Criminal Procedure directs the trial court to "mak[e] such inquiry as shall satisfy it that there is a factual basis for the plea" before entering judgment upon a guilty plea. The factual basis may be established by "anything that appears on the record." *United States v. Defusco*, 949 F.2d 114, 120 (4th Cir. 1991). In this case, Petitioner stipulated under oath that she was guilty of the offenses and that the Government could prove a series of facts to support her convictions. Accordingly, the Motion for Summary Judgment (ECF No. 68) is DENIED.

## VII. Motions to Appoint Counsel (ECF Nos. 50, 64, 65, 66.)

Petitioner has filed four motions seeking the appointment of counsel. There is no Sixth Amendment right to counsel in collateral proceedings. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987). A court may appoint counsel to a pro se litigant seeking Section 2255 relief if the court determines "that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that a court must appoint counsel only "[i]f an evidentiary hearing is required." *See* Rule 8(c) of the Rules Governing Section 2255 Proceedings. As Petitioner has adequately presented her claims and grounds for relief, there is no reason to appoint counsel at this time. The interests of justice do not require appointment of counsel, and no evidentiary hearing is necessary in this matter.

# CONCLUSION

For the foregoing reasons, Petitioner's Motion to Amend the Judgment and Commitment (ECF No. 36) is DENIED; Motion to Supplement the Presentence Investigation Report (ECF No. 37) is DENIED; Motion to Expedite (ECF No. 38) is DENIED; Motion for Judicial Notice (ECF No. 39) is DENIED; Motion to Vacate (ECF No. 47) is DENIED; Motion for Summary Judgment (ECF No. 68) is DENIED; and Motions for Appointment of Counsel (ECF Nos. 50, 64, 65, 66) are DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: February 21, 2020

_____/s/_____
Richard D. Bennett
United States District Judge